Good morning. Good morning, Your Honor. And may it please the Court, I'm Gary Rowe from the Office of the Federal Public Defender for Mr. Aceves. I aspire to reserve two minutes of time for rebuttal, if I may. And while I'd be happy to answer any questions the Court may have, because of my limited time, I'd like to focus, if I could, on the rehafe mens rea question. I'm sorry, what was the first word? The rehafe mens rea question. Don't forget waiver. Okay. Do you have a question? Yes. Well, I have a concern about waiver. I'm wondering why, when his lawyer expressly, hold on, I'm finding my note on this that I was concerned with, when his lawyer did not collaterally attack the removal, why isn't that the end of it? The answer to that question, Judge Kleinfeld, is because the waiver was not considered an intelligent. That is a problem for me, because he was represented by counsel. It's not as though he proceeded with the steps in Lozada. I don't understand why a man represented by counsel can not waive when he waives. Well, and he also, it was an attorney-prepared motion for immediate removal. So if an attorney prepares that, and he's represented by counsel, then it seems like then the immigration judge is to deny that and then say, but yeah, you've got to come in here, and I've got to remind you of your right to appeal. Yes, Your Honor. We have a couple of problems with the waiver in this case, however. One is it wasn't signed by the client. It's not clear who. So what? You stand up in court, and your lawyer tells the judge that you're conceding something. Ordinarily, there's nothing to sign. Well, usually, for example, in the context of a guilty plea, it has to be knowing, voluntary, intelligent. This isn't a guilty plea in a criminal case. But the same rules apply under the federal regulations that govern. Come to think of it, I don't know if there is a requirement that a guilty plea be signed. In federal court, most commonly, we see a plea agreement. But that's just a bilateral sentence deal. I think if you plead guilty in court orally, that's fine, isn't it? Well, in this case, Mr. Aceves didn't plead guilty. No, he conceded removability. Look, a lot of people concede removability and get on the bus, because it's better to get on the bus and go to Mexico than it is to go to jail. Different bus, and much more pleasant to be in Mexico. So actually, how many times had he been removed prior to this attorney motion, attorney-prepared motion for immediate removal? One time. If I could move — I don't want to get too waily, because I only have six minutes, and we do have another issue that I wanted to address that relates to a Supreme Court case that came down. Oh, yeah. The Rahafe issue is quite interesting. Yes. So if I could just turn to that. But if you have any more to say about the waiver, this is your chance. Yes. Mr. Aceves didn't — we don't know who Mr. Spector is, in that there are no records in Mr. Spector's office of him having represented Mr. Aceves. We don't have any records that he went over the waiver with him. So we seem to have an attorney who waived, even though there were perfectly good grounds for preventing immediate removal. Are those facts in the record that you just recited about this other attorney? Yes, they are, Your Honor. And I can give you some ER sites for them in a minute. I'm going to save time for you. Why don't you go ahead. I'll do that at rebuttal. Okay. Very well. So on the Rahafe question from the Supreme Court in June, our argument is that this is a Miller v. GAMI case, which is to say the 1968 Pena-Cabanillas decision of this court would ordinarily be controlling here. Pena-Cabanillas held that all the government has to do in a 1326 found-in illegal reentry case is prove that the defendant committed a voluntary act. In the words of Pena-Cabanillas, that he was not drugged and carried across the line. The status elements of Section 1326, not a citizen but an alien, a prior deportation, attorney general permission, did not matter, did not carry mens rea, because this is a general, not a specific intent case. What is your best authority for the proposition that you are offering to this court that the government Michelle person knew he had been previously removed? What's your best case? Rahafe. Rahafe is the case that we argue kicked the teeth out of Pena-Cabanillas. In Rahafe, there were two elements. One was possessing a firearm, and the other was, I think that was having been convicted of a felony. Is that right? No, it was being an immigrant in the country unlawfully. That's right, an unlawful immigrant. And what the Supreme Court pointed out is plenty of people possess a firearm, and it's perfectly legal. Probably some of the justices did. I don't know. We have a constitutional right to do that. We likewise have a constitutional right, not a constitutional right, but we have a right to come into the country. The only thing that makes it illegal is if we've been barred from coming into the country. So what you're saying is that's analogous to Rahafe. Yes, Your Honor. You could turn it around by saying coming into the country is an innocent act. It's only, well, I guess I see your Rahafe argument there. The question is whether Miller v. Gami saves our precedent from Rahafe. Is that right? Yes, Your Honor, and the reason I think Miller v. Gami does not is because Pena-Cabanillas held that if a statute is silent, that means there's no mens rea. Rahafe said, no, no, no, there's a presumption of mens rea unless Congress speaks clearly to the contrary. We've got mens rea here for the act of coming into the country. We have a statute that is silent. It doesn't use the word knowing willfully any kind of mens rea word. Our precedent says if you don't know you're coming into the U.S. because you're asleep in the backseat, you're innocent of the crime. Yes, and Rahafe says that's not good enough. You have to have mens rea for status elements like being an undocumented person in Rahafe itself. I don't think it says it that broadly, does it? It does. It does, Your Honor. It says that whenever Congress ‑‑ it says that if Congress is silent, then we presume mens rea, and that it applies for every element absent an express indication by Congress to the contrary. I don't think I have it underlined. If you happen ‑‑ you probably have an underlining. I will give you the quote when I come back up. All right. Do you want to save two minutes? I have two minutes. I'll save that. Thank you. Good morning. Good morning, Your Honors. May it please the Court. David Friedman of the United States. I'd like to start by addressing the Rahafe argument that we were just discussing. Defendant here does concede that there is Ninth Circuit case law on point. There's over 50 years of case law that's held that the government does not have to prove that the defendant knew he'd been previously deported. And for the many reasons we explained in our brief, that precedent is not clearly reconcilable with Rahafe. Why isn't Rahafe ‑‑ why doesn't it destroy that precedent? Well, first, there's a big textual difference between 922, which is the statute in Rahafe. And as the Court noted, all of the elements in 922 are modified by the word knowingly. And just as a matter of plain English, the Court held that knowingly applied to the status element. In 1326, by contrast, there's not ‑‑ it doesn't use the word knowingly. This Court has instead said that the mens rea is that the defendant had to voluntarily enter the country. And this brings out the other key distinction between Rahafe and this Court's precedents in 1326 and 922. Unlike 922, 1326 does not need another intent requirement beyond the one that it has to separate innocent conduct from wrongful conduct. As Your Honor noted and as the Supreme Court noted, possessing a gun is purely innocent conduct. It's conduct that's protected by the Second Amendment in most cases. So the Supreme Court noted that what brings that conduct over the line into criminal behavior is that you have that status. You're a felon or you're in the country illegally. So the Court noted that that status is the crucial element separating innocent conduct from wrongful conduct for that reason that the defendant needs to have knowledge of that status. In 1326, if someone's been deported and then they're outside of the country, there's no constitutional right for an alien to reenter the country. Let me give you a hypothetical. Suppose a 5-year-old child was removed because he had no right to be here. His parents had brought him here, snuck him in. Or maybe somebody else had using the 5-year-old child as a decoy. We get drug smuggling cases like that. When I look at 1326A2B, it says, With respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advanced consent, the 5-year-old probably doesn't even know that he was denied admission and removed. And that's what makes it a crime. How do you distinguish re-hafe there? Well, Your Honor, and this is the same hypothetical the defendant opposes in his reply brief. For a child who is brought across the border as an infant or someone who's 5-year-old, that child is almost certainly not subject to prosecution under 1326 because they've not voluntarily reentered the country. And that is an intent requirement. It's not a status crime. It's not a strict liability crime. You have to have that intent to voluntarily enter the country. And if you're a child who your parent is forcing you to cross the border or who has told you to cross the border, you've not voluntarily reentered the country. So in that sense, it's different from re-hafe. I would guess that the child in that case would have been removed without a criminal prosecution because he'd just want to get back to his mom or his aunt or something like that in Mexico. But you're saying that, but I'm hearing you say that the child couldn't be prosecuted because it wasn't a voluntary entry. That would be the lacking element. Yes, Your Honor. But he wouldn't have to be prosecuted. All he needs here is to have been removed. In terms of to be prosecuted again upon reentering the United States. Oh, a subsequent prosecution. Right. But the subsequent prosecution when he's 23, he knows perfectly well he's entering the United States. Correct, Your Honor. He just doesn't know that he's got this 5-year-old incident of removal that makes it illegal. Well, Your Honor, if you're an alien reentering the country, the burden is on you to determine you're admissible. And again, it's not like possessing a gun in re-hafe or like sending a message or posting something online in Alanis. You don't have a constitutional right to cross the border. If you're an alien crossing the border, you need to make sure you have permission. And if you do cross the border and it turns out you don't have permission, that's not innocent conduct because the burden is on you to determine that you do, in fact, have the right to enter the country. So it's the kid's burden to say, hey, Mom, you remember that time you sent me when I was a little boy of 4 or 5 years old to visit my aunt and uncle in Arizona? Was it all legal? Well, Your Honor, it's not necessarily his burden to dive into his past, but if he's going to reenter the country, he does have to figure out that he has the right to be in the country. He's going to have to get a visa. He's going to have to find some other way to determine he has a right to be in the country. And during that process, he's going to find out he doesn't have status or he's just not going to try at all. And in that case, he's either going to be refused at the border or he's going to have to enter the border in some other way. And in many of these cases, we see that defendants end up violating 8 U.S.C. 1325, which prohibits entering without inspection or misrepresenting yourself to a border guard because that's going to be the only way they're going to be able to get into the country because they don't have a right to be in the country. And in that way, crossing an international border without the authorization is just not the same as doing something like possessing a gun or sending a message or posting something online, which you have a right, an explicit right, under the Second Amendment or the First Amendment. So in that sense, we do believe... So go back to Raheve and 9th Circuit President. Did you say there was tension or there wasn't tension, or what's that? Remind me what you said there. In the government's view, we don't see any tension between the cases. We think there are at least the two key differences. One is the textual difference in that Raheve, all the elements are modified by knowingly, and in 1326, that word is just not present. But again, we think the key point is that 922 is a status crime, and the Supreme Court held that you need that mens rea requirement to separate innocent conduct from wrongful conduct, and that's ultimately the animating principle of these cases, Alanis included. And 1326 does not need that separate mens rea. The general intent is enough. So just to clarify, you conceded that standard conditions 5, 6, and 14 constitute plain error, and those need to go back, is that correct? That's correct. Okay. Did you want to, in the remainder of your time, did you want to make any comments about where an attorney-prepared motion for immediate removal is filed, how that correlates to the IJ's, how that correlates to a petitioner's right to have the IJ tell him that he has the right to appeal? Well, Your Honor, we do believe that the defendant here has waived his right to collaterally attack his prior removal order, and we think that this Court's precedent, Galicia-Gonzalez, is on point. And as in that case, the attorney, the defendant in this case had an attorney that's uncontested. He filed a motion for immediate removal on his behalf. And in the immigration context, as in other contexts, this Court presumes that when an attorney represents a client, he does so competently, and that he informs him of the key facts of representation. And for that reason, we think that by filing that motion, he's waived any right to collaterally attack. So is that how you distinguish Ubaldo Figueroa? Because I think in that case, we held a petitioner cannot make a valid waiver of his right to appeal a removal order if the IJ doesn't expressly inform the petitioner of the right. Yes, Your Honor, this is a different case because unlike Ubaldo Figueroa, this is a case where the defendant was represented, he conceded removal, and there wasn't a hearing because there was no need for one. And defense counsel notes that the defendant did request a hearing, the motion for immediate removal, but there was no point in having one because the defendant in this case had conceded removability, and that's similar to the facts of Alicia Gonzalez, where the defendant also filed a state waiver removal and also requested a hearing, and this Court said it didn't matter because he'd already sort of given up the game by filing that motion. I think my colleague, Judge Christensen, also asked counsel for the petitioner about, there were certain facts that were mentioned. Are those actually in the record about the attorney and this, that, and the other? What's your position on that? Your Honor, I believe the only fact that's in the record about the representation is that the attorney did not have a record of the prior representation. I don't think there's any dispute that he did, in fact, represent the defendant. If you look at the appellant's reply brief at pages 3 and 38, he says that this defendant retained this attorney, he hired this attorney, and I don't think there's any sort of evidence in the record that suggests anything else that happened in that representation other than that we should presume that he represented him competently. And there's nothing that's been submitted to sort of rebut that presumption. And I would note in other cases cited by a defendant like United States v. Gomez, United States v. Raya Vaca, United States v. Raya Bonilla, these are also cases where the defendant challenged his waiver in immigration court. In those cases, he submitted a declaration where the defendant said, I didn't understand my waiver. And this Court found that meaningful and relied upon that declaration to conclude that the waiver was invalid. There's no evidence in this case about why the defendant didn't understand the waiver. We don't have a declaration that he didn't, do we? No, we do not. There's no declaration, there's no testimony. I don't think we have a declaration that he didn't know he was removed either, do we? That's correct. We don't have that either, and there's no testimony on that point. It's just attorney argument. So I do see that my time is expiring. If there are any other questions, I'm happy to answer them.  Any additional questions? No. No, thank you. Thank you for your argument. Thank you. So, Judge Kleinfeld, to answer the question you asked, Rahaith holds that mens rea is essential for any status element. The status element was being undocumented and possessing a firearm. Just don't recall it speaking that broadly as opposed to just speaking to this statute. We get a lot of cases where Congress says, knowingly, does A and B, and many appellate courts read it so that knowingly just applies to A, and the Supreme Court says, uh-uh, read it going all the way down, A and B. The quote from Rahaith is, nor do we believe that Congress would have expected defendants under 922G and 924A2 to know their own statuses. And Justice Breyer, writing for the majority, gave a telling example. Which page are you looking at? I'm sorry. Which page are you looking at? I am looking at Rahaith page 2197, just before 2198. Thanks. Rahaith also gave an example, and the quote I'm going to give you comes from just below that on 2198. If status did not carry mens rea, Justice Breyer writes for the majority, an alien who was brought into the U.S. unlawfully as a small child and was therefore unaware of his unlawful status  the very same thing is true in this case. That's the hypothetical I used in the reply brief. An alien who was brought into the U.S. unlawfully as a small child, is deported, doesn't know it, is brought back two weeks later, say as a two-year-old, and then at 40 never learns his status, is deported. Your time is up, so I think we've spent time on Rahaith. Do you want to give us those record sites that you said? I do. 96 to 98 is a letter from the law clerk to the lawyer saying we have no records of this guy. 104, ER 104, is a sua sponte waiver of the appeal by the judge. You can also look at, I'll just give you other sites, 89, 500, 96 to 98, and 99. All right, thank you. Thank you. That concludes this argument. Thank you for your argument, both of you, and it will stand submitted.
judges: Kleinfeld, Callahan, Christensen